UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

S. A. A. ,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-3501

ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting his September 4, 2026, arrest and redetention, without first receiving notice and an opportunity to be heard, violated his due process rights under the Fifth Amendment. (Dkt. # 1, ¶¶ 1, 3, 60-69, 75-76, 88-93.) He seeks release from custody and injunctive relief related to his redetention. (*Id.* at 27-28.) He raises an additional cause of action entitled "Interference with the Right to Counsel" under the Due Process Clause that seeks specific injunctive relief related to his attorney of record's representation. (*Id.* ¶¶ 94-98; *see id.* at 28-29.)

Respondents filed a return memorandum (dkt. # 5), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Kurtis Reed (dkt. # 6) ("Reed Decl.") and their counsel Peter Clark (dkt. # 7) ("Clark Decl."). Petitioner filed a traverse in reply (dkt. #8) on October 5, 2026, and an amended traverse on October 9, 2026 (dkt. # 9).

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Ghana who was "encountered by a Customs and Border Protection ("CBP") officer on September 1, 2021, at or near Del Rio, Texas." (Reed Decl., ¶ 4.) CBP determined Petitioner entered the United States illegally and detained him. (*Id.*) Petitioner was issued a Form I-860 Notice and Order of Expedited Removal "pending a credible fear determination by United States Citizenship and Immigration Services ("USCIS")." (*Id.*; *see* Clark Decl., ¶ 2, Ex. 1 at 2.) Only the "Designation of Inadmissibility" section in the Expedited Removal order is complete, while the remaining "Order of Removal" section is unsigned by both an immigration officer and the supervisor. (*Id.*)

Petitioner was not expeditiously removed, nor provided a credible fear interview. Instead, ICE's Office of Emergency and Removal Operations ("ERO") released Petitioner from custody on humanitarian parole "in compliance with the COVID-era *Fraihat* preliminary injunction[.]"[2]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

[2] Although Respondents do not further explain the circumstances of Petitioner's parole, the Court assumes Petitioner was released pursuant to the nationwide preliminary injunction ordered in *Fraihat v. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709, 750–51 (C.D. Cal. 2020), *order clarified,* No. EDCV 19-1546 JGB (SHKx), 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020). The preliminary injunction was subsequently vacated on October 20, 2021, after Petitioner had already been released. *See Fraihat v. Immigr. & Customs Enf't*, 16 F.4th 613, 651 (9th Cir. 2021).

(Reed Decl., ¶ 5.) Petitioner's parole was set to expire on September 9, 2022. (*Id.*; *see* dkt. # 1-1 at 42-43 (Interim Notice Authorizing Parole).)

Petitioner asserts that after his 2022 parole expiration, no adverse action was taken against him, and he has since complied with ICE's reporting conditions for the last five years. (Dkt. # 1, ¶ 2.) These conditions included "periodic monthly and weekly SmartLink facial-recognition check-ins as directed, including at least two in-person appointments at the BI Incorporated [Intensive Supervision Appearance Program] office[.]" (*Id.* ¶ 32.) While released, Petitioner married a U.S. citizen, had two U.S.-born children with his spouse, filed an asylum application, sought adjustment of status, obtained employment authorization, and was scheduled to appear for a "final USCIS adjustment-of-status interview on October 6, 2026." (*Id.*; *see* dkt. # 1-1 at 7-8 (USCIS Interview Notice).) Petitioner is also authorized to work in the United States until October 23, 2029. (Dkt. 1, ¶ 39; *see* dkt. # 1-1 at 11.)

Just prior to the September 4, 2026 arrest and detention at issue here, Petitioner was directed by BI Incorporated to appear at the Seattle ICE Field Office. (Dkt. # 1, ¶ 43.) Accordingly, on September 4, 2026, Petitioner and his attorney reported to the Seattle ERO office. Petitioner provided proof of his pending Form I-130 (Petition for [Noncitizen] Relative) and Form I-485 (Application to Register Permanent Residence or Adjust Status)—which had been pending for 30 months leading up to his final October 6, 2026, USCIS interview. (Dkt. # 1, ¶¶ 37, 45.) Nevertheless, ICE arrested and detained Petitioner at the September 4, 2026 check-in. (Dkt. # 1, ¶ 45.) Petitioner asserts that, before he was detained, he was not provided notice of the basis for his redetention, or a hearing before a neutral decisionmaker. (*Id.* ¶¶ 48-49.) Petitioner further asserts that at the time of his detention, he had never "been found to have violated any

reporting condition, any address-notification requirement, or any other condition of his release" and that "[n]othing in DHS's own Form I-213 alleges any such violation." (*Id.* ¶ 50.)

Officer Reed responds that "ERO detained Petitioner pursuant to a Warrant for Arrest of [Noncitizen], signed by a Supervisory Detention and Deportation Officer ("SDDO")[,]" but does not explain what motivated ICE to arrest Petitioner that day. (Reed Decl., ¶ 8.) ICE also served Petitioner with a Notice to Appear ("NTA"), which charged him with inadmissibility under INA § 212(a)(6)(A)(i) and placed him into removal proceedings with the immigration court. (*Id.*; *see* Clark Decl., ¶ 2, Ex. 6.) Respondents do not acknowledge or further explain what legal effect, if any, the September 4, 2026 NTA had on the prior Notice and Order of Expedited Removal issued in 2021.

Petitioner was transferred to the NWIPC, where he remains detained. (Reed Decl., ¶ 8.) Petitioner is scheduled to attend an immigration master hearing in Tacoma, Washington on October 27, 2026. (*Id.*, ¶ 10.)

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole challenge to his immigration detention asserts that, under the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), he was entitled to notice and

an opportunity to be heard before ICE arrested and redetained him on September 4, 2026. (Dkt. # 1, ¶¶ 74-76, 88-93.) In response, Respondents assert that Petitioner is subject to expedited removal and mandatory detention under 8 U.S.C. § 1225(b)(1) and was not entitled to pre-deprivation procedures prior to his September 4, 2026 arrest and detention. (Dkt. # 5 at 1, 6-9.)

**A. Statutory Detention Authority**

As noted, Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) because he was, and remains, an "arriving [noncitizen]" who was initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." (Dkt. # 5 at 7 (citation omitted).) However, Petitioner's cause of action is not based on his statutory detention classification; it is grounded in due process under the Fifth Amendment. "[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025). That said, the Court observes that Respondents' arguments that Petitioner is subject to mandatory detention under § 1225(b)(1) are both inconsistent with and undermined by the government's treatment of Petitioner and the evidentiary record.

First, Respondents do not explain how Petitioner can be subject to § 1229a proceedings now (non-expedited removal) but remain detained and subject to expedited removal under § 1225(b)(1) based on the 2021 Notice and Order of Expedited Removal. (Dkt. 5 at 4 ("Expedited removal under § 1225(b)(1) is a distinct statutory procedure from removal under Section 1229a.").) As explained above, the 2021 Notice and Order of Expedited Removal initially issued to Petitioner appears procedurally defective; it is only partially complete and unserved. It also appears to have been superseded by the NTA served on September 4, 2026, which was issued in

accordance with 8 U.S.C. § 1229a, and which does not authorize expedited removal. (*See* Clark Decl., ¶ 2, Ex. 6 at 2.)

Second, the 2026 NTA reflects that DHS characterized Petitioner as a noncitizen "present in the United States without being admitted or paroled" and not "an arriving [noncitizen]" as Respondents argue in their return. (*See* Clark Decl., ¶ 2, Ex. 6 at 2.) This is notable because as Respondents also acknowledge, "Section 1225(b)(1) applies to 'arriving [noncitizens]' and 'certain other' noncitizens 'initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation.'" (Dkt. # 5 at 2 (citations omitted).) Petitioner's NTA says nothing about lacking valid documents, fraud, or misrepresentation. (*See* Clark Decl., ¶ 2, Ex. 6 at 2-3.) In other words, Petitioner's current designation and charge in the September 4, 2026 NTA fall outside the scope of expedited removal under § 1225(b)(1). *See also* 8 C.F.R. § 235.3(b)(3) (requiring noncitizens to be detained "pursuant to sections 235(b)(2) and 240 of the [INA]" when charged, as Petitioner is here, "with any additional grounds of inadmissibility other than [S]ection 212(a)(6)(C) or 212(a)(7)").

The Court also observes that even DHS's own internal immigration records for Petitioner state that Petitioner reported to the ICE office on September 4, 2026 "as directed by his Order of Recognizance." (Clark Decl., ¶ 2, Ex. 4 at 3.) Orders of Release on Recognizance are authorized under Section 236 of the INA,[3] codified at 8 U.S.C. § 1226—*i.e.*, the *discretionary* detention authority of the INA. There is no OREC in the record for this case and Respondents do not acknowledge or explain the reference. At minimum, it underscores the inconsistency and confusion between the government's historical treatment of Petitioner and arguments advanced in Respondents' return memorandum.

---

[3] U.S. Immigration and Customs Enforcement, ICE Form I-220A (Order of Release on Recognizance), https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (last accessed October 16, 2026).

In sum, Respondents' arguments—that Petitioner is subject to expedited removal, and mandatory detention, under § 1225(b)(1)—are undermined by the evidentiary record. The Court now turns to Petitioner's constitutional due process claim.

**B. *Mathews* and Due Process**

Due process protections extend to all persons within the United States, including noncitizens. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The parties apply the *Mathews* test to the circumstances of Petitioner's arrest and detention but reach opposite conclusions. (Dkt. # 1, ¶¶ 74-76; dkt. # 5 at 8-9.)

*1. Petitioner's private interest*

Freedom from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *see also Morrissey v. Brewer*, 408 U.S. 471, 482-83 (1972). Respondents "recognize the weighty liberty interests implicated by the Government's detention of noncitizens[,]" but argue that "courts in this [D]istrict have determined that Petitioner's liberty interest after being released on humanitarian parole do not create the same . . . interest as those released on discretionary orders of recognizance." (Dkt. # 5 at 8-9 (internal quotation marks omitted).) Respondents then cite, without further explanation or argument, three cases from this District:

*Datis v. Hermosillo*, 2:26-cv-01896-TMC, *4, (W.D. Wash. 2026, July 15, 2026); *Pantoja Sanchez v. Hernadez*, 2026 WL 1506130 (W.D. Wash. May 29, 2026); *Kleber Vasquez v. Hernandez*, 2026 WL 2936770 (W.D. Wash. Sept. 30, 2026). Each of them is distinguishable and none of them support a finding that Petitioner lacked a liberty interest.

*Datis* involved a *pro se* petitioner who primarily sought a bond hearing as a potential Bond Denial Class member as defined in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025), *aff'd sub nom. Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). *Datis*, No. 2:26-cv-01896-TMC, Dkt. 14 at 3. The court does not conduct a *Mathews* analysis in that case, but states that "the statutory restrictions for humanitarian parole do not create the same expectation" of continued liberty as individuals "released through a conditional order of recognizance[.]" *Id.* at 4. In *Pantoja-Sanchez*, the *pro se* petitioner raised a statutory claim challenging his detention under 8 U.S.C. § 1225(b). 2026 WL 1506130, at *2. The court did not consider a claim arising under due process or assessed under the *Mathews* framework. *See generally id.* It did, however, consider such a claim in the petitioner's subsequent habeas petition, where the court found petitioner had a liberty interest protected by the Due Process Clause. *See Pantoja-Sanchez v. Scott,* 2026 WL 2620522, at *5, 7 (W.D. Wash. Sept. 4, 2026). Finally, in *Kleber Vasquez*, the petitioner's circumstances were much different than Petitioner's here. In that case, the petitioner was arrested for domestic violence three months after her parole expired, and ICE placed an immigration detainer the same day. 2026 WL 2936770, at *4. The court further acknowledged that the government took "prompt action" to pursue the petitioner's removal, which distinguished it from cases involving government acquiescence or an implied extension of parole. *Id.*

Here, Petitioner's circumstances are much different. While he may have initially been paroled into the United States for a one-year period, there is no evidence the government sought Petitioner's return to custody upon its expiration. On the contrary, he thereafter continued reporting to ICE, through BI Incorporated, for years; even up to the very day he was arrested in September of this year. (Dkt. # 1, ¶¶ 32, 43.) During that time, Petitioner continued pursuing numerous routes of relief through USCIS, married, had two U.S. citizen children, and obtained employment authorization.

Courts in this District find noncitizens initially subject to humanitarian parole who have, similar to Petitioner here, established footholds in the United States, entitled to a protected liberty interest in remaining free. *See, e.g.*, *Espinoza Palacios v. Hermosillo*, 2026 WL 686138, at *7 n.2 (W.D. Wash. Mar. 11, 2026). Under Petitioner's individual circumstances, the Court finds Petitioner had a liberty interest in remaining free, that was unquestionably deprived when ICE arrested and detained him on September 4, 2026. The first *Mathews* factor weighs in his favor.

2. *The risk of erroneous deprivation and value in additional safeguards*

The Court next considers the risk of an erroneous deprivation of the interest and the potential value in additional safeguards. Respondents assert the risk was low because parolees have "necessarily lowered expectations of a liberty interest." (Dkt. # 5 at 9.) This argument has already been rejected by the Court above. *See supra*, Part 1. Respondents further assert the risk is low "when ICE follows the parole revocation regulations and terminates parole in accordance with its own process[.]" (*Id.*) Respondents contend they did just that "by issuing parole documents which have a definite expiration period and terminating parole with a charging document." (*Id.* (citing 8 C.F.R. § 212.5(e)(2)(i)).)

As Petitioner asserts, Respondents' logic is questionable. (Dkt. # 9 at 2 ("The return offers two theories of when Petitioner's parole ended, and they cannot both be true.").) The Court agrees. Respondents argue that Petitioner's parole "was terminated twice." (Dkt. # 5 at 7.) The first termination, according to Respondents, occurred automatically one year after parole was authorized. (*Id.* (citing 8 C.F.R. § 212.5(e)(1).) Respondents next assert the second termination occurred nearly four years later when Petitioner was issued the NTA on September 4, 2026. (*Id.* (citing 8 C.F.R. § 212.5(e)(2)(i).) But Respondents do not explain how there was a parole to terminate with a charging document on September 4, 2026, if parole had already automatically terminated on September 9, 2022.

Section 212.5(e), the federal regulation cited by Respondents governing the termination or revocation of parole, indicates parole can end in one of two ways. It can end automatically upon the "expiration of the time for which parole was authorized," at which point the noncitizen is to return to custody "and processed in accordance with paragraph (e)(2)" of the same section. 8 C.F.R. § 212.5(e)(1). Parole can also be revoked on notice. 8 C.F.R. § 212.5(e)(2)(i). Revocation also requires either "accomplishment of the purpose for which parole was authorized" or a designated DHS official to determine "neither humanitarian reasons nor public benefit warrants the continued presence" of the parolee in the United States. *Id.* Whether automatically terminated or revoked with notice, the regulations require "any order of exclusion, deportation, or removal previously entered" to be executed within a reasonable time. *Id.* If it cannot, "the [noncitizen] shall again be released on parole unless" a designated official opines that the public interest requires the noncitizen to remain in custody. *Id.* Here, there is no evidence the government sought Petitioner's return to custody when his parole automatically expired in 2022.

Moreover, the contemporaneous arrest report omits any evidence that Petitioner's parole expiration served as the basis of his arrest and detention on September 4, 2026. (*See* Clark Decl., ¶ 2, Ex. 4 at 3-4 (Form I-213).) Instead, it appears ICE arrested him because "checks revealed [he] had no active status in the United States and no other pending applications." (*Id.* at 3.) These otherwise unexplained "checks" were clearly wrong, as Petitioner and his lawyer brought documents showing Petitioner had several applications pending with USCIS and was scheduled to attend a final interview on October 6, 2026, at the very building in which ICE arrested him. (Dkt. 9 at 6.)

These errors demonstrate the value pre-deprivation procedural safeguards would have added in ensuring Petitioner's freedom was not erroneously deprived. The second *Mathews* factor weighs in Petitioner's favor.

*3. The governmental interest*

Respondents assert two interests that they suggest necessitated Petitioner's detention and justified forgoing pre-deprivation process: "a strong interest in preventing [noncitizens] from remaining in the United States in violation of our law" and "an interest in enforcing compliance with the parole statute and regulations and return individuals to custody when the original conditions underlying parole no longer warrant that parole." (Dkt. 5 at 9 (citations and internal quotations omitted).)

Respondents do not identify what law Petitioner violated by remaining in the United States other than lacking lawful status—a status held by Petitioner, with the government's knowledge, since was paroled into the United States. As for returning individuals to custody when parole is no longer warranted, that expressed interest is in tension with the government's four-year acquiescence after Petitioner's parole purportedly expired in 2022.

Regardless, Respondents do not explain how these interests, even if legitimately related to Petitioner, required arresting and detaining Petitioner without any process, as if exigency demanded it, and in complete disregard of the four-year process Petitioner spent complying with the demands of USCIS, ICE, and BI Incorporated. It remains entirely unclear to the Court why ICE felt compelled to arrest Petitioner on September 4, 2026, in the manner in which it did, with no evidence of noncompliance, danger, or flight risk, and knowing he was scheduled for a final USCIS interview the following month.

In sum, the three *Mathews* factors weigh in favor of Petitioner, his detention did not comport with due process, and he is entitled to habeas relief. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1138 (granting petitioner's motion for a temporary restraining order that challenged his redetention under *Mathews* and finding that "immediate release [wa]s necessary to restore the status quo ante litem") (underlining in original).

**C. Petitioner's Right-to-Counsel Claim**

Petitioner raises a claim, separate from his challenge to the lawfulness of his detention, asserting that his right to counsel has been impaired by ICE's interfering conduct. (Dkt. # 1, ¶¶ 94-96.) Petitioner's counsel asserts that ICE withheld counsel's driver's license for approximately thirty minutes on September 4, 2026 while accompanying Petitioner to the ICE Field Office, despite counsel's repeated requests for it back. (*Id.* ¶ 96.)

Petitioner's counsel also points to conduct by Respondents that occurred during unrelated habeas cases, which he contends demonstrate a pattern of interference. This includes an unlawful redetention in violation of the court's order in *M.S. v. Hernandez*, No. 2:26-cv-01985-BAT, Dkt. 24, (W.D. Wash. July 31, 2026) and the purportedly unlawful transfer of a habeas petitioner out

of the NWIPC in violation of the court's scheduling order in *L.Y.C.G. v. Hernandez*, No. 2:26-cv-03057-TL, Dkt. 3 (W.D. Wash. Aug. 28, 2026). (Dkt. # 1, ¶¶ 82-84.) Viewed together, Petitioner asserts the conduct presents evidence of similar interferences by the government that "warrant[] . . . equitable relief protecting undersigned counsel's ability to represent Petitioner[.]" (*Id.* at 27.)

Petitioner requests extensive, and specific, injunctive relief related to these contentions, which reads, in full:

> . . .
>
> (6) Enjoin Respondents from seizing, retaining, or otherwise interfering with the identification or property of undersigned counsel in connection with any future ICE appearance involving Petitioner;
>
> (7) Order that, during the pendency of these proceedings and other counsel's present and future habeas proceedings, Respondents afford undersigned counsel confidential and timely telephonic and in-person legal access to Petitioner, and provide Petitioner and undersigned counsel at least 72 hours' advance written notice—or 96 hours' notice when the notice period extends into a weekend, holiday, or date the Court is closed—before moving or transferring Petitioner outside the Western District of Washington or removing him from the United States; furthermore, Counsel wants an order enjoining Respondents from detaining counsel, whether indirectly such as failure to return the counsel driver's license, or directly in his habeas representation.
>
> (8) Enjoin Respondents from seeking termination or cancellation of adjudication of Petitioner's pending Forms I-130 and I-485, or deny the I-485 solely on the basis of the challenged redetention, and grant such further relief concerning the Notice to Appear as is within this Court's authority to preserve USCIS adjudication[.]

(Dkt. # 1 at 28-29.)

These requests are novel, specific, and require judicial intervention into processes within both the NWIPC, as well as USCIS; all of which are beyond the scope of the habeas writ and the Court's authority, generally. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical

core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention.”).

The Court appreciates the challenges of attorney-client communications—particularly in the immigration habeas context, but is reluctant to interject itself into the inner workings of the NWIPC to craft injunctive relief related to confidential telephonic access; particularly in light of the relief granted. As for Petitioner’s request to enjoin the termination of his pending USCIS applications, that request is also outside this Court’s jurisdiction. Petitioner does not cite legal authority for his request beyond the Court’s general authority to fashion equitable relief. A district court would not have jurisdiction to review a denial of a USCIS application, *see* 8 U.S.C. § 1252(a)(2)(B), and so it would similarly lack the jurisdiction to enjoin a prospective denial, even if the request was warranted on the merits. Petitioner’s request for injunctive relief related to his second cause of action is therefore denied.

**D. Remaining Injunctive Relief**

Finally, Petitioner seeks to enjoin the government from redetaining him without notice and a hearing. (Dkt. # 1, at 28.) Petitioner asserts that he faces a threat of redetention because he has already been subject to one unlawful detention and because Respondents continue to redetain noncitizens despite many orders holding such conduct is unconstitutional. (*Id.* at 28 (citations omitted).)

While the Court finds Petitioner was detained without adequate process on September 4, 2026, it does not necessarily follow that he continues to face “some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.” *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003). His request is therefore denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2) Respondents shall release Petitioner within **forty-eight (48) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3) Respondents shall file a status report, no later than **two (2) business days** from the date of this Order, confirming that Petitioner has been released.

(4) Petitioner's second cause of action and related request for permanent injunctive relief are DENIED.

(5) Petitioner's request for permanent injunctive relief related to his redetention is DENIED.

(6) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer prior to filing any motion.

Dated this 19th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge